EMANUEL RODACK and SARAH RODACK, Landlords, Appellants, *v.* NEW MOON THEATRE, Name Fictitious, Real Name Unknown by Petitioner, Party Intended Occupying Premises Herein Described, Tenant; BERNARD SHAPIRO, Respondent.

Supreme Court, Appellate Term, Second Department, June, 1923.

Chattel mortgages — lease for years is personal property — when legal title to leasehold passes to mortgagee — mortgagee proper party defendant in summary proceedings.

A chattel mortgage works a present transfer of the legal title of the property covered by it, defeasible by the payment of the sum it is given to secure.

This right to a defeasance is a legal right which the mortgagor possesses up to the time he is in default; thereafter he has no rights at law and the legal title in the mortgagee becomes absolute, and the only right then existing in the mortgagor is one in equity to redeem.

A ten years' lease from August 1, 1919, of premises conducted as a moving picture theatre contained no restriction against its assignment, and S. as assignee of the lease transferred it to the present tenants in June, 1922. A chattel mortgage given to secure the payment of a part of the consideration of the assignment was duly recorded in the proper register's office. Both the assignment of the lease and the taking back of the chattel mortgage were with the knowledge and approval of the landlords, although it did not appear that they made any agreements with the tenants. When the first installment of the unpaid balance of the consideration for the assignment became due on October 1, 1922, the tenants who had entered into the possession of the premises advised S. that if they paid what was due him they would be unable to pay their November rent whereupon S. told them that he would take $250 on account and they could keep the balance to pay the November rent when it became due. In a summary proceeding to dispossess the tenants for non-payment of the November rent, the tenants interposed no answer and a final order was awarded to the landlord and a warrant of removal was issued and executed on November 15, 1922. The papers submitted upon a motion by S. to vacate the final order in favor of the landlords justified a finding that they and the tenants with the aid of one with whom the landlords claimed to have made a new lease of the premises, attempted to cut off S.'s rights as mortgagee; that the summary proceeding was instituted solely for that purpose and in bad faith; that no new lease was in fact made but that the tenants are still in possession of the premises. Upon affirming an order vacating the final order in the landlords'

favor and amending the proceeding by bringing S. in as a party defendant, *held*, that the legal title to the leasehold passed to S. when the chattel mortgage was made and thereupon and thereby he became the assignee of the lease, and except for the possibility of a defeasance or a redemption, he was the absolute owner of the leasehold, and thereafter the tenants had no interest in the property or the leasehold except the right of defeasance or redemption upon payment of what was due.

When the tenants, who had made no covenant with the landlords, ceased to be in possession in their own right and continued therein only as the agents of S. he was the only one liable for the rent and was a proper party defendant to the summary proceeding of which he had no notice until after the warrant of removal had been executed.

Sections 1437 and 1438 of the Civil Practice Act do not indicate that S. did not acquire title to the lease.

Though a lease for years by section 33 of the Real Property Law is called a chattel real, it is personal property, and the fact that for the purposes of article 9 of the Real Property Law chattels real, except a lease for a time not exceeding three years, are deemed to be real property by virtue of section 290(1) of the Real Property Law, does not change the character of the leasehold.

APPEAL from an order vacating and setting aside a final order in a summary proceeding to recover possession of property and bringing in additional parties. Ordered entered in Municipal Court of the city of New York, fifth district, borough of Brooklyn.

*Myron S. Yochelson* (*Max Schleimer*, of counsel), for appellants.

*Grover M. Moscowitz*, for respondent.

CROPSEY, J. This proceeding was instituted to obtain possession of premises on the ground of non-payment of rent. The premises consist of a moving picture theatre. The tenant, so denominated, interposed no answer and a final order was awarded to the landlords and a warrant issued and executed.

Thereafter, Bernard Shapiro, the respondent, made a motion to vacate the final order and to amend the proceedings by having himself brought in as a party defendant. He attacks this proceeding, claiming defects in it in several respects, but it is unnecessary to consider those claims, for if Shapiro has no right to intervene or to be heard then it seems clear he cannot complain of irregularities in the proceeding; and if he has the right to intervene, then that right was properly granted to him by the order appealed from. In other words, Shapiro's right to the relief he seeks is in no way dependent upon whether there were or were not defects in the proceeding as instituted by the landlords.

The question, therefore, to be considered is as to the right of Shapiro to be heard at all. He holds a chattel mortgage covering the leasehold on the premises in question. The lease was for a term of ten years beginning August 1, 1919. There was no restric-

tion against its assignment and in fact it had been assigned a number of times. Shapiro had himself been one of its assignees and he in turn had transferred it to the present tenants. This was in June, 1922. The consideration for that assignment was $3,000, $1,000 of which was paid in cash and the remainder of $2,000 was to be paid in four payments of $500 each, the first of which became due October 1, 1922, and the others at three months intervals thereafter. These four items were represented by a bond, and a chattel mortgage was also given to secure them. This mortgage was duly recorded in the proper register's office. While the lease did not require the landlords' consent to its assignment, in fact the assignment from Shapiro to the tenants and the taking back by Shapiro of the chattel mortgage were all with the knowledge and approval of the landlords, although there is nothing to show that they made any agreement with the tenants. Upon taking the assignment from Shapiro the tenants entered into possession, and up to the time of the execution of the warrant had been conducting a moving picture theatre in the premises.

When the first installment of $500 became due, which was on October 1, 1922, the tenants advised Shapiro that their business was not good and that if they paid what was due him they would be unable to pay their November rent. Shapiro then told them he would take $250 on account and the balance they could keep to pay the November rent, which was $225, when it became due. The tenants, however, did not pay the rent for that month and this proceeding was instituted, with the result already stated.

On the day the warrant was executed, namely, November fifteenth, the landlords claim to have made a new lease to a man named Shulman, who, it was asserted, then entered into possession of the theatre. Shapiro had no notice of the proceeding until after the warrant had been executed. He then had talks with the tenants and with Shulman. The details of these need not be stated. It suffices to say that upon the papers submitted to the court below the finding was justified, that the landlords and the tenants with the aid of Shulman attempted to cut off Shapiro's rights as mortgagee and that the summary proceeding was instituted solely for that purpose and in bad faith, and that there never was in fact a new lease made to Shulman, and that the tenants are still in possession as they were before the proceeding was commenced. The transaction was a sham and seems to have been perpetrated for the purpose of cutting off or affecting Shapiro's rights under his mortgage. If the law justified the making of the order appealed from there is every reason why it should be affirmed.

The principal question involved in the consideration of this appeal is the rights of a mortgagee of chattels. There is some conflict upon this point among the earlier cases in this state and the decisions in the different states, but it must now be taken to be the settled law here that a chattel mortgage works a present transfer of the legal title to the property covered by it, defeasible by the payment of the sum it is given to secure. *Barrett Mfg. Co.* v. *Van Ronk*, 212 N. Y. 90; *Kearny* v. *Post*, 1 Sand. 105, 109; affd., 2 N. Y. 394; *Hall* v. *Sampson*, 35 id. 274, 277; *Matthews* v. *Victor Hotel Co.*, 74 Misc. Rep. 426, 427; affd., 150 App. Div. 928; *Parshall* v. *Eggert*, 54 N. Y. 18, 23; *People* v. *Remington & Sons*, 59 Hun, 282, 287–289; affd., 126 N. Y. 654; *Reich* v. *Cochran*, 213 id. 421; *Sheldon* v. *McFee*, 216 id. 618, 623.

These cases follow the common-law rule which was applicable alike to mortgages upon real and personal property, but in this state while the common-law rule now prevails as to chattel mortgages it does not hold good as to mortgages upon real property. Gerard Titles (5th ed.), 619; *Becker* v. *McCrea*, 193 N. Y. 423, 426, 427. The older cases already referred to, such as *Tallman* v. *Bresler*, 65 Barb. 369; *Astor* v. *Hoyt*, 5 Wend. 603, 616; *sub nom. Astor* v. *Miller*, 2 Paige, 68, 77; *Walton* v. *Cronly*, 14 Wend. 63; *Damainville* v. *Mann*, 32 N. Y. 197, 205, and *Levy* v. *Long Island Brewery*, 26 Misc. Rep. 410, must be deemed to no longer state the law as to the title of a mortgagee of chattels. The decision in *Broman* v. *Young*, 35 Hun, 173, was merely that a person doing work upon an oil well, at the instance of the lessee of the land, did not have a lien against the leasehold which could be enforced against the holder of a mortgage thereon made by the lessee, where the mortgagee had not authorized the work and did not consent to its being done. Some of the language used in the opinion (p. 180), which is but dictum, is at variance with the above-mentioned general rule, but as support for it there is cited only the case of *Astor* v. *Hoyt, supra*, which laid down the rule that no longer prevails; the case of *Trimm* v. *Marsh*, 54 N. Y. 599, 604, which dealt with a mortgage upon real property, where the rule is different, and the case of *Booth* v. *Kehoe*, 71 N. Y. 341, 343, which does not support the text, and does not hold that the legal title of a leasehold does not pass to the mortgagee thereof, but holds only that a mortgage thereon does not come within the provisions of the statute relating to the filing of chattel mortgages. In *Riggs* v. *Pursell*, 66 N. Y. 193, 201, the court said that a mortgage on a leasehold did not transfer title to it. But the court could hardly have intended to lay down such a broad rule, for in *Bragelman* v. *Daue*, 69 N. Y. 69, 74, the same court said that upon taking a

chattel mortgage, the mortgagee acquired a defeasible legal title to the property covered by it, which would become absolute upon the failure of the mortgagor to pay the sum secured. And this latter case is one of those cited in *Barrett Mfg. Co.* v. *Van Ronk, supra,* as stating the settled law of this state. The language used in the opinion in *Cartier* v. *Pabst Brewing Co.,* 112 App. Div. 419, 422, is not at variance with the general rule.

Upon the giving of a chattel mortgage the legal title to the property covered by it passes at once to the mortgagee. This title, however, is defeasible. It may revert to the mortgagor upon payment of the indebtedness secured. This right to a defeasance is a legal right which the mortgagor possesses up to the time he is in default. After default the mortgagor has no rights at law and the legal title in the mortgagee becomes absolute. The only right then existing in the mortgagor is one in equity to redeem. *Bragelman* v. *Daue, supra,* 74; *Casserly* v. *Witherbee,* 119 id. 522, 526.

As Shapiro held the chattel mortgage it was not necessary that there should be a default upon the part of the tenants in order to transfer to him the legal title to the leasehold. That title passed to him when the chattel mortgage was made. He thereupon and thereby became the assignee of the lease. Except for the possibility of a defeasance, or a redemption, Shapiro was the absolute owner of the leasehold. The tenants no longer had title thereto. Their only interest therein was their right to work a defeasance, or to redeem, upon complying with the conditions of the mortgage and paying the money secured by it. The tenants originally had obtained an assignment of the lease from Shapiro. That was the only way in which they had secured any interest in the leasehold. There was no privity of contract between them and the landlords, only privity of estate. Then, upon making the chattel mortgage to Shapiro, they reassigned to him all they had gotten from him. Thereafter they had no interest in the property, or the leasehold, except the right of defeasance, or redemption, upon paying what was due. While they continued in possession of the premises, they were there merely as the representatives or agents of Shapiro. Their possession was his possession. Shapiro, as the assignee of the lease, had the right to the possession of the premises, and by allowing the tenants to remain therein, he, in effect, constituted them his agents. *Bragelman* v. *Daue, supra; Tannahill* v. *Tuttle,* 3 Mich. 104, 111; *Jamieson* v. *Bruce,* 6 Gill & Johns. (Md.) 72, 74; and cases in note to *Orser* v. *Storms,* 18 Am. Dec. 541, 558. Thus Shapiro was an assignee of the lease and in possession of the premises

Appellate Term, Second Department, June, 1923. [Vol. 121

An assignee of a lease in possession is a necessary party to a summary proceeding. *Fults* v. *Munro*, 202 N. Y. 34; *Hite* v. *Haley*, 188 N. Y. Supp. 906. A summary proceeding against an original tenant but not against an assignee or subtenant is ineffective against the latter. *Croft* v. *King*, 8 Daly, 265; *Ash* v. *Purnell*, 16 id. 189, 192; *Matter of Barney* v. *DuVivier*, 86 Misc. Rep. 29, 30. Possession in the person sued is necessary to give jurisdiction in summary proceedings. Therefore, if the only person who is sued is not in possession, the court has no jurisdiction and the proceeding must be dismissed. *Warrin* v. *Haverty*, 149 App. Div. 564. Where the premises are in the possession of a mere agent or representative, the summary proceeding should be brought against his principal. *Lesster* v. *Ferber*, 176 N. Y. Supp. 21. An assignee of a lease in possession of the premises, in addition to being the proper party to be sued in a summary proceeding, is liable to the landlord for the rent by privity of estate. *Marone* v. *Hinckel Brewery Co.*, 126 App. Div. 554; *Sayles* v. *Kerr*, 4 id. 150; *Century Holding Co.* v. *Ebling Brewing Co.*, 185 id. 292, 296. This proceeding against the tenants alone would not lie. Had Shapiro learned of it before the final order was made he could have intervened then, and paid the rent and secured a dismissal of the proceeding. *Levy* v. *Winkler*, 59 Misc. Rep. 482. We see no legal reason why his application might not be made after the final order as well as before it. It follows that Shapiro as assignee of the lease in possession of the premises properly was made a party defendant herein. See Civ. Prac. Act, § 1415.

There are cases which are at variance with the conclusion above stated. Some of those already have been mentioned. Another one is *Rubenstein* v. *Rosenthal*, 50 Misc. Rep. 313. There the court reached the result that a mortgagee of a leasehold was not a proper party defendant in a summary proceeding to obtain possession of the premises. The court pointed out that the design of the statute was that only persons in possession need be made parties and said that while the mortgagee might have paid the rent he was under no obligation to do so. The court held, in effect, that such a mortgagee was not an assignee of the lease and was not in possession of the premises. Of course, if we accept this premise the decision is unassailable. But the opinion does not discuss the question as to the rights of such a mortgagee and we think the court must have assumed that the rule as to chattel mortgages was the same as to mortgages upon real property, and that the title to the thing mortgaged did not pass to the mortgagee, else the opinion would have been different.

The Court of Appeals has made a recent decision which has

some bearing upon the question under consideration. *Hoffman Brewing Co.* v. *Wuttge,* 234 N. Y. 469. That action was by the mortgagee of a leasehold to foreclose the mortgage. It was commenced after the landlord had brought a dispossess proceeding against the tenant in which a final order was entered in favor of the landlord, but upon which no warrant was ever issued. Thereafter, the tenant surrendered possession of the premises to the landlord and the summary proceeding was discontinued. Upon the trial of that action plaintiff's attorney claimed that because the lessor had not proceeded with his dispossess proceeding and had not had the warrant executed, which would have given the mortgagee a chance to redeem, the lessor had waived the default of the lessee in the non-payment of the rent, and that the lease was, therefore, still in existence subject to the plaintiff's mortgage. The Court of Appeals refused to accept this contention. The tenant in that case had leased the premises from the landlord and had covenanted that upon failure to pay the rent the landlord might obtain possession of them. The Court of Appeals held that the landlord's rights under the lease had not been affected by the fact that the tenant had mortgaged the leasehold and that when the tenant failed to pay his rent the landlord was not obliged to advise the mortgagee, nor was he compelled to resort to legal proceedings, but that he could accept the voluntary surrender of the premises from the tenant. The Court of Appeals did not discuss the question whether the mortgagee was an assignee of the lease.

Certainly, that decision cannot be deemed to have changed what that same court had previously said was the settled law of the state (*Barrett Mfg. Co.* v. *Van Ronk, supra*), when it did not say it was making such a change, and in fact did not refer to any of its prior decisions holding that a mortgagee of chattels obtains a present legal title to the property covered by the mortgage. As such a mortgagee becomes an assignee of the lease it may be somewhat difficult to understand just what the tenant has that he could surrender to the landlord. See *Eten* v. *Luyster,* 60 N. Y. 252, 259; *Allen* v. *Brown,* 5 Lans. 280, 286. And see, also, another opinion in the same case by a different judge, evidently delivered at the same term, in 60 Barb. 39, 43. It would seem that, having transferred his legal title to the leasehold, he could not surrender the latter, but at most could surrender only his right to work a defeasance if he was not in default, or, if already in default, his right to redeem in equity. At least, this should be so unless the mortgagee is prevented from asserting his rights by virtue of some recording act. It seems, however, the rule is different

where the tenant has covenanted with the landlord, for that was the case decided by the Court of Appeals. In the case before us there was no such covenant. In none of the briefs submitted to the Court of Appeals was it pointed out that the mortgagee of chattels had the legal title to the property mortgaged. In one of them, some of the older cases holding the opposite view were cited, but none of the cases, including the one in 212 New York, which have settled the law of this state, was mentioned.

In the case before us the tenants remained liable for the rent only so long as they remained in possession as tenants. They had made no covenant with the landlords. Hence, when they ceased to be in possession in their own right and continued there only as the agents of Shapiro they were no longer liable for the rent. Thereafter, Shapiro was the only one who was liable for it. The tenants then could not have surrendered the lease to the landlords for they had parted with it and had nothing to surrender. They could have transferred, as has been mentioned, only their right to work a defeasance or to redeem. The Court of Appeals seems to stress this distinction, for it points out that when the mortgagee in its case took the mortgage it must have known the terms of the lease and, therefore, must have known that the tenant had covenanted to pay the rent, and that in default thereof the landlord could regain possession. The Court of Appeals also said if the surrender of the lease had been made by the tenant in bad faith, then the rights of the mortgagee would not be affected. Even if the case before us is not distinguishable from this recent decision of the Court of Appeals upon any other ground, it certainly comes within this last statement, for here there was ample evidence of such bad faith.

There are provisions in the Civil Practice Act (§ 1438) giving the mortgagee of certain leases the right to redeem where the tenant has been dispossessed. That right does not exist until a year has elapsed since the issuance of the warrant, the tenant having the right to redeem within that time. § 1437. But these provisions do not indicate that the mortgagee does not acquire a legal title to the lease. These provisions come from the Civil Code and originated in chapter 240 of the Laws of 1842. At the time of the enactment of the last-mentioned statute there were a number of decisions in this state holding that a mortgagee of chattels did not hold legal title to the property mortgaged. Therefore, there was then a real reason for the provision being made giving such mortgagees the right to redeem as well as tenants and assignees of tenants.

By our statutes a lease for years is called a chattel real. Gen.

Const. Law, § 40; Real Prop. Law, § 33. It is not, however, real property, but is personal property. *State Trust Co.* v. *Casino Co.*, 5 App. Div. 381; *Matter of Ehrsam*, 37 id. 272; *Despard* v. *Churchill*, 53 N. Y. 192; *Matter of Althause*, 63 App. Div. 252, 255; affd., 168 N. Y. 670. The term " real property," as used in the first eight articles of the Real Property Law, is coextensive in meaning with lands, tenements and hereditaments. § 2. The Recording Acts are contained in article 9 of that law. For the purposes of that article only, chattels real, except a lease for a term not exceeding three years, are deemed to be real property. § 290, subd. 1. This, however, does not change the character of the leasehold. *State Trust Co.* v. *Casino Co.*, 19 App. Div. 344, 346.

When the mortgage is on a lease for more than three years, it should be recorded to protect the mortgagee against a subsequent purchaser in good faith and for value, whose conveyance is first recorded. Real Prop. Law, §§ 290, 291. But if the mortgage is on a lease for three years or less, it does not come within the above sections, nor does it seem to come under the provisions relating to the filing of chattel mortgages, viz., Lien Law, section 230. *Booth* v. *Kehoe*, 71 N. Y. 341. And the fact that mortgages upon leaseholds are not deemed to be mortgages upon real property is further emphasized by other provisions of the Real Property Law. Sections 271, 272 and 273 provide as to the meaning of certain terms in mortgages upon leases on real property, and prescribe the permissible forms of such mortgages. Other sections (254 and 258) of the law relate to mortgages upon real property and prescribe the meaning of certain terms therein and the permissible forms thereof.

Section 708 of the Civil Practice Act provides that leasehold property, where the unexpired term is at least five years, is deemed to be real property. But again, this designation is, by the terms of the section, applicable only to matters covered by that particular article of the act which relates to executions against property. Art. 43.

Order affirmed, with twenty-five dollars costs.

LAZANSKY and FABER, JJ., concur.

Order affirmed.