D. A. Schulte, Inc., Appellant, *v.* Loft, Inc., Respondent, Impleaded with Others.

(Argued May 27, 1936; decided July 8, 1936.)

*Samuel Seabury* and *Jerome Eisner* for appellant.

*David L. Podell, Herman Shulman, Benjamin Algase* and *Herbert Barnet* for respondent.

FINCH, J.  This is a summary proceeding to recover possession of real property.

The Hart Estates owned certain property located at Forty-second street and Sixth avenue in New York city. They leased the property to David A. Schulte, Inc., for a term ending April 30, 1944.  In 1924 D. A. Schulte, Inc., leased the same premises to the Forty-second Street and Sixth Avenue Corporation for a term ending April 29, 1944.  In April, 1925, the Forty-second Street Corporation leased a portion of the premises to Loft, Inc., for a term ending April 30, 1944.  In 1929 Loft subleased the premises to Blumcoha Restaurant, Inc.

Schulte dispossessed the Forty-second Street Corporation in 1931 under a summary proceeding to which Loft was not a party. Thereupon Schulte served notice on Loft advising it of the dispossess proceedings and asking it to pay all rents due and owing and all future rents to Schulte. Loft continued in possession through its sublessee and thereafter paid directly to Schulte the annual rent of $43,524 fixed under the Loft-Forty-second Street Corporation lease.

On December 1, 1932, following a request by Loft for a reduction in rental, Loft and Schulte entered into an agreement under seal whereby (1) Schulte reduced Loft's rent for a period of one year; (2) the Loft-Forty-second Street Corporation lease was " amended; " (3) and in all other respects the Loft-Forty-second Street Corporation lease was " ratified and confirmed."

Loft paid Schulte the reduced rental for the year and then reverted to the rental fixed in the Loft-Forty-second Street Corporation lease, which it continued to pay until 1935, at which time it purported to assign its interest in the Loft-Forty-second Street Corporation lease to the 104 West Forty-second Street Restaurant Corporation. Upon Loft's refusal to pay further rents, this summary proceeding was instituted by Schulte.

The Municipal Court granted a final order in favor of Schulte awarding it possession and a judgment in the sum of $3,625 against the defendant Loft. The Appellate Term reversed, one justice dissenting. The Appellate Division affirmed the Appellate Term.

The question raised is whether or not Loft became a tenant of Schulte for the balance of the term fixed in the Loft-Forty-second Street Corporation lease, that is, until 1944, by reason of the agreement entered into in 1932 when the rent was reduced for one year. Did the 1932 agreement alter the relationship between Schulte and Loft so that Loft became liable to pay the rent reserved in the Loft-Forty-second Street Corporation lease until May 1, 1944?

Prior to the agreement in 1932 the status of Loft was that of an assignee *pro tanto*. (*New Amsterdam Casualty Co.* v. *National Union Fire Ins. Co.*, 266 N. Y. 254; *Gillette Bros., Inc.,* v. *Aristocrat Restaurant, Inc.,* 239 N. Y. 87.) After the Forty-second Street Corporation had been dispossessed Loft attorned to the superior title of Schulte. This attornment created, however, nothing more than a tenancy at will or, at most, from year to year. (*Matter of O'Donnell,* 240 N. Y. 99.) Loft was under an obligation to pay rent and to comply with all other covenants running with the land as long as it remained in possession, but it could leave at any time. (Walsh on the Law of Property [2d ed.], § 182.)

The parties continued in this relationship until 1932 when they entered into the agreement. Did the agreement change the relationship other than to reduce the rental for the period of a year? The respondent, Loft, maintains that it did not. Loft claims that the agreement was made to embody the provision for the reduction of rental, but that otherwise it was to maintain its status as assignee with the right to terminate its obligation to pay rent by merely moving out; that the terms of the agreement were intended only to insure that the covenants would continue to run with the land and to modify some of the covenants running with the land, and to provide that after the expiration of the year Loft would be obliged to renew payment of the original rental, if it continued in possession.

The agreement, upon examination, however, does not support this contention and clearly shows that the parties entered into a lease incorporating by reference the Loft-Forty-second Street Corporation lease under which lease the term was not to expire until 1944.

The first paragraph of the agreement contained the provision for a reduction of rent for a period of one year. The second paragraph provided that the third paragraph of the Loft-Forty-second Street Corporation lease was to be amended and contained a complete revision of that

paragraph, making it a part of the agreement. The revised paragraph constantly refers to " Lessor " and " Lessee." This language can have no meaning unless it refers to Schulte and Loft. Certainly it did not refer to the Forty-second Street Corporation which had been dispossessed a year and a half earlier.

The paragraph also uses such phrases as " the term hereby granted," " the term of this lease," and " this lease." These terms can only refer to the new agreement and show that it was regarded as a lease. The paragraph also provides that Loft waives the right to redeem " as provided by Sections 1437 to 1440 * * * of the Civil Practice Act * * *." These sections of the Civil Practice Act apply only to the right to redeem where the unexpired term of the lease under which the property is held exceeds five years at the time the warrant is issued. If the agreement only covered one year of reduced rent, why this provision?

The following new language is also found in this paragraph: " * * * it being agreed that this lease and the term herein granted shall terminate and come to an end on the date specified in such notice, with the same force and effect as if said day were the end of the term herein originally demised, * * *."

This new language which was substituted for the language in the Loft-Forty-second Street Corporation lease is entirely without meaning unless the parties intended to treat the agreement as creating a new lease between them.

The 1932 agreement also provides:

" *Third:* The parties hereto agree that all of the other terms, covenants and conditions of the aforesaid lease last above mentioned, are hereby in each and every respect ratified and confirmed and are not to be deemed as impaired by any of the foregoing amendments.

" *Fourth:* This agreement shall be binding upon and enure to the benefit of the parties hereto, their respective successors and assigns."

From all this it becomes obvious that the parties were adopting the provisions of the Loft-Forty-second Street Corporation lease as the provisions of a new lease between them incorporating the provisions by reference and adopting them except as specifically amended.

One of the provisions of the Loft-Forty-second Street Corporation lease incorporated by reference in this new lease, was a covenant against assignments without the written consent of the lessor. The lease provided: " The covenants, provisions and agreements herein contained shall in every case apply to, be binding upon and enure to the benefit of the respective parties hereto and their respective successors and assigns with the same force and effect as if mentioned in each instance where a party hereto is named, *but no assignment in violation of this lease shall vest in such assignee any right or title in or to the leasehold hereby created."* (Italics interpolated.)

These provisions against assignments, as noted, were incorporated in and became part of the lease between Schulte and Loft.

Loft now claims that the Municipal Court lacked jurisdiction to entertain the summary proceeding against it since it was not in possession, having assigned to 104 West Forty-second Street Corporation. Schulte never granted permission for such an assignment. Schulte never accepted rent from or recognized 104 West Forty-second Street Corporation as its tenant. Schulte, therefore, had a right to disaffirm the purported assignment to 104 West Forty-second Street Corporation, to continue to treat Loft as its tenant in possession and to institute a summary proceeding against it upon its failure to pay the rent in compliance with the lease.

The order appealed from should be reversed and the order of the Municipal Court affirmed, with costs in all courts.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS and LOUGHRAN, JJ., concur; CROUCH, J., dissents.

Ordered accordingly.